UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

NATIONAL FEDERATION OF THE BLIND,
MINDY JACOBSEN, JOYCE CARRICO, and
NIHAL ERKAN,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, NEW YORK
CITY DEPARTMENT OF INFORMATION
TECHNOLOGY AND
TELECOMMUNICATIONS, ANNE ROEST,
in her official capacity as Commissioner of the
New York City Department of Information
Technology and Telecommunications, and
CITYBRIDGE LLC,

              Defendants.

No. 16-cv-6018

**COMPLAINT**

## INTRODUCTION

1.     This lawsuit seeks to end civil rights violations committed by the City of New York ("the City"), the New York City Department of Information Technology and Telecommunications ("DoITT"), Anne Roest, the Commissioner of the New York City Department of Technology and Telecommunications, in her official capacity, and CityBridge LLC ("CityBridge") (collectively "Defendants") against blind persons who seek to use the LinkNYC public communications network currently being installed across New York City.

2.     A revolution in technological access is happening on the public sidewalks of Manhattan. Archaic pay phones are being replaced with an innovative public communications network known as "LinkNYC." The freestanding structures that comprise the public communications network are called "Links," and they expand access to technology to millions of New Yorkers. From surfing the Internet on a touchscreen tablet to contacting emergency

-1-

services through the use of a dedicated 911 button to Wi-Fi hotspots, all free of charge, these Links represent progress in providing internet access and vital technological services to people regardless of income.

3.      This innovative program is a product of a public-private partnership between the City and CityBridge LLC, a consortium composed of experts in technology, media, connectivity and user experience that includes three private companies:  Intersection, Qualcomm, and CIVIQ Smartscapes.  At no cost to taxpayers, CityBridge will continue to construct these Links across New York City's five boroughs as the Links replace the City's 7,500 pay phones.

4.      Yet, as the nation celebrates the twenty-sixth anniversary of the Americans with Disabilities Act, approximately 350,000 New Yorkers who are blind or have low vision are excluded from accessing the LinkNYC public communications network throughout the City because the Links are inaccessible to blind users.

5.      People who are blind[1] cannot independently access most all the services offered by LinkNYC on an equal basis with other people because the Links are inaccessible.  Instead, blind people must secure the assistance of a third party to use the service, a burden that Defendants do not place on non-disabled people who can independently access the services offered by LinkNYC.

6.      Plaintiff Mindy Jacobsen (Jacobsen) is a blind resident of Brooklyn.  Ms. Jacobsen teaches technology courses in Manhattan and frequently passes Links along 8th Avenue.  Ms. Jacobsen attempted to use LinkNYC at the 18th Street and 8th Avenue location. Because the Links are inaccessible to blind users, Ms. Jacobsen was unable to access the

---

[1] Plaintiffs use the word "blind" to describe individuals who, as a result of a visual impairment, use alternative techniques or assistive technology for tasks done visually by persons without a visual impairment.

touchscreen which has Internet, free calling, city services, and map functions. Without sighted assistance, she is unable to use most of the LinkNYC services.

7.     Plaintiff Joyce Carrico (Carrico) is a blind resident of Manhattan. She works as a technology specialist in midtown Manhattan. Ms. Carrico attempted to use LinkNYC's services at the Link located at 23rd Street and 8th Avenue. Because of the inaccessibility of the Links for blind users, Ms. Carrico is unable to access the touchscreen which has Internet, free calls, city services, and map functions.

8.     Plaintiff Nihal Erkan (Erkan) is a blind resident of Queens. She is a student at John Jay College of Criminal Justice in Manhattan. Ms. Erkan attempted to use LinkNYC's services at the Link located at 57th Street and 8th Avenue. Because of the inaccessibility of the Links, without sighted assistance, Ms. Erkan is unable to use LinkNYC services available through its touchscreen, including calling 911.

9.     Plaintiff National Federation of the Blind ("NFB") is a membership organization whose members include many blind New Yorkers and blind people who will visit New York and who cannot use Defendants' LinkNYC public communications network on an equal and independent basis.

10.     Access to technology holds great promise for improving inclusion of blind people throughout society and expanding their independence. The means exist and are readily achievable to ensure that technology like LinkNYC is fully accessible to blind people. However, rather than comply with their affirmative obligations under federal law to make the Links accessible, Defendants ignored their responsibilities and excluded blind people from the technological revolution of LinkNYC.

## JURISDICTION

11.     This is an action for declaratory and injunctive relief, brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504 and supplemental jurisdiction over the NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

13.     This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

14.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District.  The Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

15.     Ms. Jacobsen resides in Brooklyn, New York.  She is blind and an individual with a disability for purposes of the ADA and Section 504.  Because she is blind, Ms. Jacobsen cannot independently access technology without screen reader software or braille.  Ms. Jacobsen passes by various Links on her route to work in Manhattan and would use LinkNYC services if the Links were accessible to blind people.

4

16.     Ms. Carrico resides in Manhattan, New York.  She is a blind individual with a disability for the purposes of the ADA and Section 504.  Because she is blind, Ms. Carrico cannot independently access technology without screen reader software or braille.  Ms. Carrico passes several Links where she lives and works in Manhattan and would use LinkNYC services if the Links were accessible to blind people.

17.     Ms. Erkan resides in Queens, New York.  She is a blind individual with a disability for the purposes of the ADA and Section 504.  Because she is blind, Ms. Erkan cannot independently access technology without screen reader software or braille.  Ms. Erkan passes several Links on her way to school at John Jay College of Criminal Justice in Manhattan and would use LinkNYC services if the Links were accessible to blind people.

18.     Organizational Plaintiff NFB is the oldest and largest national organization of blind persons, is a Section 501(c)(3) non-profit corporation duly organized under the laws of the District of Columbia and headquartered in Baltimore, Maryland.  It has affiliates in all 50 states, Washington, D.C., and Puerto Rico.  NFB and its affiliates are widely recognized by the public, Congress, executive agencies of state and federal governments, and the courts as a collective and representative voice on behalf of blind Americans and their families.  The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation.  NFB has many blind members who live in New York City, and who desire to use the LinkNYC public communications network owned and operated by Defendants, and otherwise access the important services available at Links, on an equal and independent basis.

19.     The ultimate purpose of NFB is the complete integration of the blind into society on a basis of equality.  This objective includes the removal of legal, economic, and social discrimination.  As part of its mission and to achieve these goals, NFB has worked actively to ensure that the blind have an equal opportunity to access the same information and make use of the same tools by collaborating with developers of different technologies and websites to ensure accessibility for the blind.  In particular, NFB has expended resources working with organizations, businesses, and governmental entities around the country to help make their automated technologies accessible to blind individuals.

20.     Defendants New York City and the Department of Information Technology and Telecommunications are the public entities responsible for granting a franchise to the private CityBridge consortium that is currently installing and maintaining the LinkNYC public communications network throughout the City.

21.     Defendant Roest, sued in her official capacity, is the Commissioner of the New York City Department of Information Technology and Telecommunications.

22.     Defendant CityBridge is the NYC-based consortium of experts in technology, media, connectivity, and user experience that is installing, operating, and maintaining the LinkNYC public communications network.  CityBridge includes three private companies: Intersection, Qualcomm, and CIVIQ Smartscapes.

## PLAINTIFFS' ALLEGATIONS

### A.  LinkNYC Expands Access to Technology to New York City Residents and Visitors.

23.     On December 10, 2014, the New York City Franchise and Concession Review Committee unanimously approved a Franchise Agreement between Defendants the City and DoITT with Defendant CityBridge "[f]or the Installation, Operation, and Maintenance of Public

Communications Structures in the Boroughs of the Bronx, Brooklyn, Manhattan, Queens and Staten Island."

24.     CityBridge LLC is a consortium composed of leaders in the areas of technology, media, connectivity, and user experience that includes three private companies:  Intersection, Qualcomm, and CIVIQ Smartscapes.

25.     As a result of this agreement, a public communications network called LinkNYC is currently being installed throughout the City.  The freestanding LinkNYC service providers, called Links, are equipped with wireless technology, interactive communication systems, and digital advertising displays.

26.     According to the City's website, "[e]ach ADA-compliant Link structure features:"

- 24/7 free encrypted Wi-Fi with up to gigabit speeds;

- Free phone calls to anywhere in the U.S.;

- Integrated lighting;

- Digital displays which exhibit strategic, insight-driven advertisements and public service announcements;

- Touchscreen Android tablet expediting access to the Internet;

- Tactile keypad with Braille lettering, dedicated 911 button, speaker, microphone, and headphone jack;

- USB charger for free mobile device usage;

- Iconic & durable aluminum construction;

- Sleek design & minimal footprint which restores sidewalk space previously encumbered by large payphone enclosures.

27.     In addition to the Links' long list of technological features and services, they will provide users with access to city services, maps, and directions.

28.     All of the Links' services are free to users because it is funded through advertising.  In fact, LinkNYC projects that it will generate over $ 500 million in advertising revenue for the City.

29.     LinkNYC is currently in the beta phase of installation, as CityBridge has already installed many Links up and down 3rd and 8th Avenues in Manhattan.  By the end of the City's Franchise Agreement with CityBridge, up to 10,000 Links will be installed across all five boroughs of New York City.

**B.  The LinkNYC Public Communications Network Is Inaccessible to Blind Users.**

30.     LinkNYC's website boasts that the Links are ADA-compliant.  Article 3.8 of the Franchise Agreement between Defendants, entitled "Compliance with the ADA," reads:  "The Franchisee shall require and ensure that the System comports to the current requirements of the Americans with Disabilities Act of 1990, 42 U.S.C. 12132 ("ADA"), the Architectural and Transportation Barriers Compliance Board Guidelines, and any other current applicable laws relating to accessibility for persons with disabilities.  All Structures . . . shall include a tactile key pad and braille lettering . . . ."

31.     Despite the lip service paid to accessibility, the Links are not fully accessible to blind users.

32.     The technology needed to make the Links accessible to blind users exists and is readily achievable.  In fact, the tablets' operating system, Android, has several accessibility applications that are pre-installed.  These applications enable the tablet to produce audible directions in response to the user's touch.

33.     Astoundingly, this group of Defendants, comprised of some of the leading technological experts in the world, failed to take the minimal and routine steps to make these tablets and other of the various services of LinkNYC accessible to blind New Yorkers.

34.     As a result of these barriers in each of the Links comprising Defendants' LinkNYC public communications network, blind individuals who live, work, or visit New York City cannot use the full services offered on the public sidewalks by LinkNYC.

35.     Defendants' operation of the inaccessible LinkNYC public communications network discriminates against people with disabilities.

**C.  Harm to Plaintiff Jacobsen**

36.     Ms. Jacobsen has experienced and continues to experience barriers in attempting to access the services of LinkNYC because of Defendants' ongoing, continuous violations of disability access laws.

37.     Ms. Jacobsen works in Manhattan teaching computer courses to groups and individuals who are losing their vision.

38.     There are numerous Links within walking distance from Ms. Jacobsen's work.

39.     On July 20, 2016 Ms. Jacobsen attempted to access LinkNYC's services at the Link located at 18th Street and 8th Avenue.

40.     Ms. Jacobsen could not use the Link services because they were inaccessible.

41.     Ms. Jacobsen struggled to find the hub of the Link, where the touchscreen and number keypad are located, because there is no braille or audio to direct her to the center of the Link.  Eventually, after touching the sides of the machine, she was able to find the touchscreen and number keypad.

42.     Ms. Jacobsen could not detect which functions were available to use because the touchscreen did not have tactile features or screen reading functionality.  She could not use the Link's Internet, free calling, city services, or map functions.

43.      Ms. Jacobsen intends to use the LinkNYC map and city services for directions or transit instructions, and the free calling function and USB power in the event that her phone battery is low.  If the Links were accessible, she would use LinkNYC services several times a week.

44.     Ms. Jacobsen wants to use LinkNYC's services on an equal and independent basis, but is being denied these services by Defendants.

**D.  Harm to Plaintiff Carrico**

45.     Ms. Carrico has experienced and continues to experience barriers in attempting to access the services of LinkNYC because of Defendants' ongoing, continuous violations of disability access laws.

46.     Ms. Carrico lives in Manhattan and passes by several Links in her daily life and work.

47.     On July 22, 2016 Ms. Carrico attempted to use the Link at 23rd Street and 8th Avenue.

48.     Ms. Carrico attempted to access the touchscreen services by plugging her headphones into the jack.  Because the touchscreen did not have tactile features and did not have any audio or screen reading functionality, Ms. Carrico could not access the Internet, free calling, city services, or map functions.

49.     Ms. Carrico intends to use the Links occasionally for directions, charging her phone, and making phone calls.

50.     Ms. Carrico wants to use LinkNYC's services on an equal and independent basis, but she is being denied these services by Defendants' failure to comply with federal laws.

### E.  Harm to Plaintiff Erkan

51.     Ms. Erkan has experienced and continues to experience barriers in attempting to access LinkNYC services because of Defendants' ongoing, continuous violations of disability access laws.

52.     Ms. Erkan lives in Long Island City in Queens, New York and commutes to Manhattan to attend class at John Jay College of Criminal Justice several times per week.  There are several Links located in this area.

53.     On July 25, 2016 Ms. Erkan attempted to access LinkNYC services at the Link located at 57th Street and 8th Avenue.

54.     Ms. Erkan first found the headphone jack, plugged her headphones in, and was unable to hear anything.  Ms. Erkan then unplugged her headphones and attempted to use the Link's touchscreen services, including the Internet, free calling, city services, or maps, but could not because there were no tactile features nor screen reading functionality.

55.     Ms. Erkan was also unable to use the Link's 911 call function because the touchscreen prompts the user to verify if they want to continue to call 911.  After Ms. Erkan pressed the 911 emergency button once, the touchscreen read:  "Press the 911 button again to connect your emergency call to 911."  Without screen reading functionality, Ms. Erkan was not even aware that she needed to take an additional step to contact emergency services.

56.     Ms. Erkan intends to use the Links for accessing the Internet, charging her phone, calling 911, making phone calls, and utilizing the map.

57.     Ms. Erkan wants to use LinkNYC's services on an equal and independent basis, but because the Links are inaccessible to blind people, Ms. Erkan is being denied the ability to access Defendant's public communications network.

### F.  Harm to Plaintiff NFB and Its Constituents

58.     Among NFB's constituents are not only blind persons in New York City, but the many blind tourists, business people, students, and teachers who visit New York City every year. NFB has many blind members who wish to access Defendants' LinkNYC public communications network on an equal and independent basis.

### CAUSES OF ACTION

**Count I:  Disability-Based Discrimination**
**In Violation of Title II of the Americans with Disabilities Act**
**Against All Defendants except CityBridge**
**42 U.S.C. § 12131, et seq.**

59.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

60.     Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability:  "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

61.     The term "disability" includes physical and mental impairments that substantially limit one or more major life activities.  42 U.S.C. § 12102(2).  A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation

12

barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

62.     The Plaintiffs and the constituents of the organizational Plaintiff are persons with disabilities within the meaning of the statute in that they have impairments which substantially limit the major life activity of seeing.  They are also qualified in that they are located in New York City and thus are eligible to benefit from the City's LinkNYC public communications network.  Plaintiffs and constituents of the organizational Plaintiff are qualified individuals with disabilities within the meaning of 42 U.S.C. §§ 12102, 12131 and 28 C.F.R. § 35.104.

63.     A "public entity" includes state and local governments, their agencies, and their instrumentalities.  42 U.S.C. § 12131(1).  Defendants the City and DoITT are public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

64.     Title II of the ADA requires public entities, including Defendants, to operate each of their programs, services or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149, 35.151.

65.     LinkNYC as a public communications network is a program, service or activity under Title II of the ADA.

66.     Defendants have failed to provide blind persons meaningful access to the LinkNYC program throughout Manhattan in violation of Title II of the ADA.  Defendants have also failed to operate the LinkNYC public communications network so that it is readily accessible and usable by blind people when viewed in its entirety, in violation of Title II of the ADA.

67.     Defendants the City and DoITT have entered into contractual and/or other arrangements with private entities to install, operate, and maintain the Links within New York City and have failed to ensure that the private entities meet the requirements under the ADA that would apply to Defendants if Defendants provided the service directly, in violation of Title II of the ADA.

68.     Congress directed the Department of Justice ("DOJ") to write regulations implementing Title II's prohibition against discrimination.  42 U.S.C. § 12134.  Pursuant to this mandate, the DOJ has issued regulations defining the forms of discrimination prohibited by Title II of the ADA.  28 C.F.R. § 35.101, *et seq.*

69.     Defendants, through contractual, licensing and/or other arrangements and relationships, are currently denying qualified individuals with disabilities the opportunity to participate in or benefit from the public communications network operated by CityBridge, affording individuals with disabilities an opportunity to participate in the public communications network operated by CityBridge that is not equal to others, providing individuals with disabilities with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or to gain the same benefit from the public communications network as that provided to others, aiding or perpetuating discrimination against qualified individuals with disabilities by providing significant assistance to an agency, organization, or person that discriminates on the basis of disabilities in providing any aid, benefit, or service to beneficiaries of the public communications network, in violation of 28 C.F.R. § 35.130(b)(1)(i)-(iii) and 28 C.F.R. § 35.130(b)(1)(v).

70.     Defendants, directly and/or through contractual or other arrangements utilize criteria and/or methods of administration that have the effect of subjecting qualified individuals

with disabilities to discrimination on the basis of their disability and defeat or substantially impair the accomplishment of the objectives of the LinkNYC public communications network with respect to individuals with disabilities, in violation of 28 C.F.R. 35.130(b)(3)(i)-(ii).

71.     Defendants have failed to make reasonable modifications in their policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of 28 C.F.R. § 35.130(b)(7).

72.     As a direct and proximate result of the aforementioned acts, Plaintiffs have been and continue to be injured.

73.     Defendants' conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**Count II:  Disability-Based Discrimination**
**In Violation of Title III of the Americans with Disabilities Act**
**Against Defendant CityBridge**
**42 U.S.C. § 12181, et seq.**

74.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this Complaint.

75.     Title III of the ADA prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

76.     Defendant CityBridge owns or operates the Links, which are places of public accommodation.  42 U.S.C. § 12181(7)(F) ("public accommodation" includes the catch-all "other service establishment."); *see also* 28 C.F.R. § 36.104.  The Links are service

15

establishments.  Much like a new and improved internet café, Links provide a range of services to the public, including phone calls to anywhere in the U.S., internet access on the touchscreen tablet, and a USB charger for mobile devices.  All of these services are offered on the public sidewalk.

77.     Defendant CityBridge has discriminated against Plaintiffs on the basis of their disabilities and constituents of organizational Plaintiff NFB by subjecting them "to a denial of the opportunity . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" offered by Defendant CityBridge on the public sidewalks through "contractual [and] licensing . . . arrangements."  42 U.S.C. § 12182(b)(1)(A)(i).

78.     Defendant CityBridge has discriminated against Plaintiffs and constituents of organizational Plaintiff NFB by affording them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the establishment owned, operated, or contracted for usage by Defendant CityBridge on the sidewalks of New York City in a manner that is not equal to that afforded to other individuals.  42 U.S.C. § 12182(b)(1)(A)(ii).

79.     Defendant CityBridge has discriminated and continues to discriminate against Plaintiffs and constituents of organizational Plaintiff NFB by failing to modify their policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with disabilities.  42 U.S.C. § 12182(b)(2)(A)(ii).

80.     Defendant CityBridge has discriminated and continues to discriminate against Plaintiffs and constituents of organizational Plaintiff NFB by failing to provide necessary auxiliary aids and services at facilities where provision of such auxiliary services does not create an undue burden and would not fundamentally alter the nature of the good, service, facility,

privilege, advantage, or accommodation offered by Defendant CityBridge.  42 U.S.C. §

12182(b)(2)(A)(iii).

81.     Each individual Plaintiff is an individual with a disability within the meaning of

the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36.  Each has an

impairment that substantially limits the major life activity of seeing.  42 U.S.C. § 12102(2)(A);

*see also* 28 C.F.R. § 36.104.

82.     All constituents of organizational Plaintiff NFB are individuals with disabilities

within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36.

Each has an impairment that substantially limits the major life activity of seeing.  42 U.S.C. §

12102; 28 C.F.R. § 36.104.

83.     Defendant CityBridge's conduct constitutes ongoing and continuous violations of

the ADA.  Unless restrained from doing so, Defendants will continue to violate the law.

Through their conduct, Defendants have caused and will continue to cause Plaintiffs immediate

and irreparable injury.

84.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs request relief as set forth below.

### Count III:  Disability-Based Discrimination
### In Violation of Section 504 of the Rehabilitation Act
### Against All Defendants except CityBridge

85.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of this

Complaint.

86.     Section 504 mandates that "[n]o otherwise qualified individual with a disability . .

. shall solely by reason of her or his disability, be excluded from the participation in, be denied

the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

87. An "individual with a disability" is defined under the statute, in pertinent part, as an "individual who has a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(2)(B) (referencing 42 U.S.C. § 12102). A "qualified" disabled person means a person who meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity. 28 C.F.R. § 39.103.

88. Plaintiff's members include, and Plaintiff represents, qualified individuals with disabilities within the meaning of the applicable statutes. Plaintiffs are otherwise qualified to participate in the programs or activities of the LinkNYC public communications network.

89. Defendants the City and DoITT are recipients of federal financial assistance sufficient to invoke the coverage of Section 504 and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

90. Through the acts and omissions alleged herein, Defendants the City and DoITT, solely because of Plaintiffs' disabilities, excluded Plaintiffs from participation in Defendants' programs and activities and denied Plaintiffs the benefits of Defendants' programs and activities, and subjected Plaintiffs to discrimination in violation of 29 U.S.C. § 794 and the regulations promulgated thereunder.

91. Defendants the City's and DoITT's acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder, and have resulted in injury to Plaintiffs.

92. As a proximate result of Defendants the City's and DoITT's violations of Section 504, Plaintiffs and constituents of organizational Plaintiff NFB have been injured, and continue

to be injured, as set forth herein.  This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

93.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C § 794(a).

WHEREFORE, Plaintiffs pray for relief as set forth below.

**Count IV:  Disability-Based Discrimination
In Violation of the New York State Human Rights Law
Against All Defendants**

94.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

95.     The New York State Human Rights Law ("NYSHRL") provides that, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."  N.Y. Exec. Law § 296(2)(a).

96.     The term "place of public accommodation" in the NYSHRL, "regardless of whether the owner or operator of such place is a state or local government entity or a private individual or entity," includes "establishments dealing with goods or services of any kind" and "any public areas of any building or structure" including the Links that offer a range of services on public sidewalks throughout New York City.  N.Y. Exec. Law § 296.9.

97.     "[D]iscriminatory practice" is defined in the NYSHRL to include:

> (1) a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

(2)  a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in undue burden;

N.Y. Exec. Law § 296.2(c)(i)-(ii).

98.     By the conduct described above, Defendants have committed unlawful discriminatory practices against Plaintiffs and have violated the New York State Human Rights Law.

99.     Defendants' conduct constitutes an ongoing and continuous violation of the NYSHRL and, unless restrained from doing so, Defendant will continue to violate said law.  This conduct, unless enjoined, will continue to inflict injuries and Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the programs and services provided by the LinkNYC public communications network.

100.    Defendant's discriminatory conduct is ongoing, and consequently, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### Count V: Disability-Based Discrimination
### In Violation of the New York City Human Rights Law
### Against All Defendants

101.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

102.    The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a) provides, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider

of public accommodation because of the actual or perceived . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person the accommodations, advantages, facilities, or privileges thereof . . . ."

103.     The term "person" in the NYCHRL "includes one or more, natural persons, proprietorships partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations  . . . ."  N.Y.C. Admin. Code § 8-102(a).  The City is a governmental body or agency and thus is a person within the meaning of the NYCHRL.  The DoITT is also a governmental body or agency and thus is also a person within the meaning of the statute.  CityBridge is a partnership between three corporations and thus is also a person within the meaning of the statute.

104.     The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kinds are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102(9).  As such, the Links comprising the LinkNYC public communications network constitute a public accommodation as they are a service, accommodation, advantage or privilege offered to the general public and thus falls within the meaning of N.Y.C. Admin. Code § 8-102(9).

105.     Defendants, as persons under the statute, act as the "owners" and "managers" of the LinkNYC public communications network.  In so doing, the City, DoITT, and CityBridge directly and indirectly deny to persons with disabilities the accommodations, advantages, facilities or privileges of the LinkNYC public communications network for the reasons set forth herein.

106.     The NYCHRL additionally requires that any person prohibited from discriminating under Section 8-107 on the basis of disability "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Admin. Code § 8-107(15).  The term "covered entity" is defined as a person required to comply with any provision of Section 8-107, which includes Defendants under N.Y.C. Admin. Code § 8-102(1).

107.     The City, DoITT, and CityBridge qualify as covered entities and must make the reasonable accommodations necessary to allow persons with disabilities the opportunity to enjoy the right of benefiting from the LinkNYC public communications network pursuant to N.Y.C. Admin. Code § 8-107(15).  Defendants have made inadequate or no reasonable accommodations to allow blind persons the opportunity to enjoy the right of benefiting from the LinkNYC public communications network.

108.     As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

109.     Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL and, unless restrained from doing so, Defendants will continue to violate said law. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.  Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of the LinkNYC public communications network as well as reasonable accommodations which would provide them the opportunity to benefit from the LinkNYC public communications network. Consequently, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

110.    Declare that the actions and inactions described herein violate the rights of

Plaintiffs under the ADA, Section 504, and the Human Rights Laws of New York State and New

York City;

111.    Issue an order requiring that Defendants take the necessary steps to remedy the

LinkNYC public communications system so that the Links are fully accessible to blind persons

in compliance with the ADA, Section 504, and the Human Rights Laws of New York State and

New York City;

112.    Issue an order enjoining Defendants from continuing to engage in the unlawful

conduct of installing Links that are not fully accessible for persons who are blind;

113.    Issue an order requiring that Defendants maintain any existing accessible features

of the Links so that such features continue to provide full usability for persons who are blind;

114.    Award reasonable attorneys' fees and costs; and

115.    Grant such other and further relief as the court deems just and proper.


Dated:  July 28, 2016              Respectfully submitted,
        New York, New York         DISABILITY RIGHTS ADVOCATES

                                   _____
                                   Michelle Caiola
                                   Seth Packrone
                                   DISABILITY RIGHTS ADVOCATES
                                   675 Third Avenue, Suite 2216
                                   New York, NY 10017
                                   Tel:  (212) 644-8644

Fax:  (212) 644-8636
mcaiola@dralegal.org
spackrone@dralegal.org

Daniel Goldstein*
Albert Elia*
120 E. Baltimore St., Suite 1700
Baltimore, MD 21202
(410) 962-1030
(443) 923-1314 (direct dial)
dfg@browngold.com
aelia@browngold.com
*Motions to Appear *Pro Hac Vice* Pending

Attorneys for Plaintiffs